627 A.2d 706

BANQUESOURCE CAPITAL CORP., PLAINTIFF, v. PINE BROOK CARE CENTER, INC., MARVIN BEINHORN; GERALD M. FRIEDERWITZER A/K/A GERALD M. FRIED; HIRSCH WOLF; ERIC PANETH; FREEHOLD REALTY ASSOCIATES; PENSION ROAD REALTY; ELIUOHU E. DESSLER; SURI DESSLER, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County
Civil Action

Decided May 11, 1992.

---

[1] Although it is not necessary to reach this issue, this court would hold that even if plaintiff were aware of defendant's attempt to exculpate itself from liability, such an agreement would be null and void as a matter of public policy. This is so because of the duty defendant owed to plaintiff and the unequal bargaining power between the parties.

*Vincent Halleran,* for plaintiff.

*Kevin Kovacs,* for defendants, Pine Brook Care Center, Inc.; Marvin Beinhorn; Gerald M. Friederwitzer; a/k/a Gerald M. Fried; Hirsch Wolf, Eric Paneth, Pension Road Realty (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys).

CLEARY, J.S.C.

Plaintiff Banquesource Capital Corp., a mortgage broker, claims a commission for attempting to arrange a mortgage loan between defendant Pine Brook Care Center, Inc., a nursing home operator, and Rhode Island Hospital Trust National Bank, a financial institution in the business of making loans to health care facilities.

On June 26, 1987 Gerald M. Friederwitzer, a/k/a Gerald M. Fried, as individual borrower and as principal of Pine Brook Care Center, Inc., executed two 30 day exclusive authorization agreements authorizing plaintiff to arrange a $4,500,000 renovation and construction loan to be followed by a $4,500,000 permanent loan for the rehabilitation and expansion of a nursing home known as the Pine Brook Care Center, located in Manalapan, New Jersey. Pine Brook Care Center, Inc., is the corporate operator of the nursing home. The principals of the corporation are Marvin Beinhorn, Hirsch Wolf, Eric Paneth, and Gerald Fried.

The nursing home is located on property owned by Freehold Realty Associates, a partnership whose principals are Eliuohu E. Dessler and Suri Dessler, husband and wife. Suri Dessler is the daughter of Hirsch Wolf. Pension Road Realty is a partnership consisting of defendants Beinhorn, Wolf, Paneth and Fried which was created to take title to the land on which the nursing home is located.

For this purpose, Pension Road Realty acquired, through a series of transactions, certain options granted by Freehold Realty Associates. When the parties executed the commission agreement of June 26, 1987, title was held by Freehold Realty Associates. Mr. and Mrs. Dessler and Freehold Realty Associates, although named in the complaint, have never been served and are therefore not before this court.

To obtain the loan, plaintiff Banquesource Capital Corp., contacted Rhode Island Hospital Trust National Bank. Plaintiff's efforts produced a mortgage proposal dated September 3, 1987 from this Bank. This proposal promised a loan commitment if Pine Brook Care Center, Inc. met certain conditions listed in the proposal. Defendant Beinhorn accepted the proposal, agreed to the conditions and forwarded $15,000 to Rhode Island Hospital Trust National Bank to cover a "set-up fee".

On October 29, 1987, Rhode Island Hospital Trust National Bank issued a conditional commitment in the amount of $4,300,000. An additional fee of $28,000 was demanded, which Beinhorn paid

when he accepted the commitment. One of the conditions imposed was the execution and delivery of a first mortgage lien on the nursing home to include buildings, land and improvements.

As the transaction proceeded, environmental problems were discovered on the property and the Bank required their correction prior to the closing. Defendants hired an environmental specialist, EFP Associates, to clean up the site by removing an 8000 gallon underground oil tank and the surrounding contaminated soil. Despite defendants' efforts, Rhode Island Hospital Trust National Bank was dissatisfied with the result and it began imposing additional clean-up and monitoring requirements. Although defendants disagreed with the need for these additional requirements, they nonetheless attempted to comply with them.

As the environmental problems were being addressed, Rhode Island Hospital Trust National Bank extended the commitment several times. Defendants agreed to all the extensions and accepted all the conditions imposed by the Bank to obtain them. These included the threat of substantial daily penalties which unnerved defendants.

Before the environmental situation could be resolved, plaintiffs were forced to commence construction by March 17, 1988 to prevent the expiration of the Certificate of Need required and issued by the New Jersey Department of Health. Since the loan had not closed, defendants began to advance construction costs from their own pockets in the anticipation of recouping these moneys from the proceeds of the loan.

During this period there was extensive correspondence between the attorneys for Rhode Island Hospital Trust National Bank and the attorneys for defendants, all of which was directed to the elimination of the impediments to the closing.

As the parties worked toward closing, the Bank finally realized that none of the applicants for the loan owned the property and that none of the proposed borrowers could deliver the first mortgage. Nevertheless, it agreed to close the loan if Freehold Realty

Associates delivered the first mortgage. Defendants contacted Mr. and Mrs. Dessler who agreed to provide the mortgage. However, the Bank insisted that Mr. and Mrs. Dessler appear in Rhode Island to be interviewed. This required them to travel from Israel to the United States. Mr. Dessler agreed to appear for the interview, however, Mrs. Dessler would not travel because of her pregnancy.

The Bank would not yield on this requirement and continued to demand an interview with Mr. and Mrs. Dessler. Without this interview it would not close the loan. Meanwhile defendants, fearful that the loan would never close, concerned about their personal outlays and anxious about the accumulating unpaid penalties imposed for the extensions, negotiated a new loan from another lender which closed in September, 1988.

The Rhode Island Hospital Trust National Bank commitment was allowed to expire, and defendants refused to pay plaintiff any commission on the transaction. Plaintiff retained $7500 which was paid to it upon the execution of the original agreement.

Both parties agree that if the Rhode Island Hospital Trust National Bank loan had closed, plaintiff's commission would be $124,600.

There is a scarcity of law in the State of New Jersey regarding the liability of a borrower for commissions to a mortgage broker who obtains a loan at the request of the borrower. In *Abeles v. Adams Engineering Co., Inc.*, 64 *N.J.Super.* 167, 165 *A.*2d 555 (App.Div.1960), *mod.* 35 *N.J.* 411, 173 *A.*2d 246 (1961), Judge Kilkenny opined that a mortgage broker earns his commission when he produces a person ready, willing and able to comply with the specific terms under which his services were engaged or on other and different terms which are satisfactory to his principal. *Id.*, 64 *N.J.Super.* at 178, 165 *A.*2d 555. This statement of law relating to a broker's liability to his principal was generally applicable to all broker-principal relationships including that between broker and vendor of real estate. A principal was liable for

a commission if a mortgage commitment was produced or a contract of sale was signed even if the transaction never closed.

Subsequently, the Supreme Court in *Ellsworth Dobbs v. Johnson*, 50 *N.J.* 528, 236 *A.*2d 843 (1967), modified the law as it applied to real estate contracts to require that an actual closing be completed in accordance with the contract for the broker to be entitled to his commission. In providing a rationale for this modification the Court stated:

> It seems to us that fairness requires that the arrangement between broker and owner be interpreted to mean that the owner hires the broker with the expectation of becoming liable for a commission only in the event a sale of the property is consummated, unless the title does not pass because of the owner's improper or frustrating conduct. *Id.* at 548, 236 *A.*2d 843.

Thereafter, in *Van Winkle & Liggett v. G.B.R. Fabrics, Inc.*, 103 *N.J.* 335, 349, 511 *A.*2d 124 (1986), the Supreme Court held that absent bad faith or special circumstances, the threshold standard for imposing liability on a seller for a brokerage commission in an aborted real estate transaction is a finding that a seller committed a breach of the sales contract. The Court stated that not every contractual breach will result in liability for the commission because where the seller's breach is innocent or unavoidable, the imposition of liability may not be justifiable. *Id.*

In the instant case, this court finds no jurisprudential reason why there should be a difference between the law relating to brokerage commissions payable in real estate transactions and brokerage commissions payable in mortgage transactions. A vendor of real estate expects to pay the broker from the proceeds of the sale. A borrower in a mortgage transaction expects to pay the broker's commission from the proceeds of the loan. A broker expects to be paid from the funds generated from the transaction, be it a sale or a loan. Both a seller of real estate and a borrower of money seek a purchaser or a lender who is able to consummate the transaction, and not one who can merely sign a contract. These are the common expectations of any participant in a broker-principal transaction, and in this case these expectations are

expressed explicitly in the contract signed by the parties on June 26, 1987.

■ Therefore, this court holds that in cases involving mortgage brokers, absent default or wrongful conduct by the borrower, a mortgage loan must close before liability for a commission can be imposed upon the borrower.

The default or wrongful conduct necessary to impose liability for a mortgage commission, must be at least a breach of contract, which is neither innocent nor unavoidable. The contract breached may be between the lender and borrower, as expressed in the loan commitment, or between the broker and the borrower, as expressed in the commission agreement.

■ In the instant case, the loan with Rhode Island Hospital Trust National Bank never closed. Plaintiff argues that the failure to close was the fault of defendants and thus recovery is permitted. Mr. Leonard Ranalli, who was employed by Rhode Island Hospital Trust National Bank at the time of this transaction, unequivocally testified that the only reason the loan did not close was because Mrs. Dessler would not appear for an interview with the borrower. Mr. and Mrs. Dessler were not parties to the mortgage authorization agreement, they were not partners in the nursing home operation, nor is there any evidence that they were under the control of any party to this action.

Plaintiff makes much of the fact that Mrs. Dessler is the daughter of defendant Hirsch Wolf. This relationship does not imply, and there is no evidence, that defendant Wolf exercised any control over his daughter.

Plaintiff also argues that defendants failed to disclose that title to the property was not held by Pine Brook Care Center, Inc. nor the individual defendants and that those defendants lacked the ability to pledge the property as a first lien.

The court notes that as early as August 21, 1987, two months prior to the first commitment issued by Rhode Island Hospital Trust National Bank, Mr. Dennis Brown of Banquesource Capital

Corp., wrote a letter to the Bank stating in part: "At that time the two above-mentioned owner/operators entered into an option agreement with Freehold Realty for a purchase price of $920,000 which has been partially paid and extended to the present". Additionally, on that date, in the same letter, Brown explained to the Bank how $828,000 of the mortgage proceeds would be used to pay Freehold Realty Associates. Beinhorn testified that Brown was aware of the convoluted transactions surrounding the title, and on this issue, the court determines that Brown knew the condition of the title early on in the transaction.

In sum, the court finds that defendants acted in good faith. They advanced substantial sums of money to plaintiff and to the Bank to procure the commitment. They performed extensive and costly engineering and environmental rehabilitation of the property at the request of the Bank. They engaged the services of counsel to process the loan. The correspondence between counsel for Rhode Island Hospital Trust National Bank and counsel for defendants, which is in evidence, clearly demonstrates not only a willingness, but an eagerness on the part of defendants to pursue the loan through completion. Defendants made efforts to produce Mr. and Mrs. Dessler for the required interview with the Bank. Also, they advanced their own funds to begin construction to protect the Certificate of Need.

Based on all these circumstances, the court finds that any defect in defendants' performance was innocent and unavoidable and not sufficient to justify the imposition of liability for a mortgage brokerage commission.

Plaintiff has not sustained the burden of proof. The complaint is dismissed.